THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| PERQUONDIS L. HOLMES | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. |
| | ) |
| LJ ROSS ASSOCIATES, INC. AARGON | ) |
| AGENCY INC., EXPERIAN | ) |
| INFORMATION SOLUTIONS, INC., | ) |
| TRANS UNION, LLC, EQUIFAX | ) |
| INFORMATION SERVICES, LLC, | |
| Defendants. | |

---

## COMPLAINT AND DEMAND FOR JURY TRIAL

---

## INTRODUCTION

COMES NOW the Plaintiff Perquondis Holmes ("Mr. Holmes" or "Plaintiff"), by Counsel, and for his Complaint against Defendants Experian Information Solutions, Inc., Trans Union, LLC, Equifax Information Services, LLC, LJ Ross Associates, Inc, and Aargon Agency Inc. Plaintiff alleges as follows:

## PRELIMINARY STATEMENT

1.     This is an action for actual, statutory, and punitive damages, costs, and attorneys' fees brought pursuant to the Fair Credit Reporting Act ("FCRA") 15 U.S.C. §§ 1681-1681x et seq.

1

2.     Plaintiff is the victim of identity theft.  Identity theft has become an alarmingly frequent invasion of privacy and "has emerged" as "one of the fastest growing white-collar crimes in the United States." *Sloane v. Equifax Info. Services, LLC*, 510 F.3d 495, 505, 2007 WL 4535267 (4th Cir. 2007).

3.     In 2015, 13.1 million consumers were victims of identity thieves, who collectively stole nearly 15 billion dollars.  *See generally*, Al Pascual, Kyle Marchini, & Sarah Miller, *2016 Identity Fraud: Fraud Hits an Inflection Point*, JAVELIN STRATEGY & RESEARCH (Feb. 2. 2016), *available* at https://www.javelinstrategy.com.

4.     The FCRA "provides the primary recourse for victims of identity theft." Christopher P. Couch, Forcing the Choice Between Commerce & Consumers: Application of the FCRA to Identity Theft, 53 Ala. L. Rev. 583, 587 (2002). The purpose of the FCRA is to require consumer reporting agencies to "adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. § 1681. In furtherance of its underlying purposes, the FCRA sets out requirements and obligations that consumer reporting agencies, § 1681i, and their furnishers of

information, § 1681s 2(b), must follow when consumers dispute the accuracy of the information reported in their credit reports.

5.     Thus, the FCRA holds the credit reporting agencies and furnishers responsible for taking reasonable steps to correct a consumer's credit report once she brought the theft to the agency's attention. *See Sloane v. Equifax Info. Services, LLC*, 510 F.3d 495, 506-07 (4th Cir. 2007) ("Of course, Equifax bore no responsibility for the initial theft, but the FCRA makes the company responsible for taking reasonable steps to correct Suzanne's credit report once she brought the theft to the company's attention; this Equifax utterly failed to do.").

6.     As a result of identity theft, Mr. Holmes's credit report included multiple accounts that did not belong to her. After Mr. Holmes disputed the inaccurate information with Equifax, Trans Union, and Experian, each defendant failed to conduct a reasonable investigation and delete the inaccurate information from Mr. Holmes's credit report.

7.     Accordingly, Mr. Holmes alleges claims against Equifax, Trans Union, and Experian for failing to reasonably ensure the maximum possible accuracy of Plaintiff's credit reports in violation of § 1681e(b), and for failing to fulfill their reinvestigation duties in violation of § 1681i.

8.      Mr. Holmes also alleges claims against LJ Ross Associates, Inc. and Aargon Agency Inc. for failing to fully and properly investigate Plaintiff's disputes as required by § 1681s-2(b)(1).

## JURISDICTION AND VENUE

9.      Jurisdiction of this court arises under 15 U.S.C. § 1681(p) and 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

10.     Venue in this District is proper in that the Defendant regularly conducts business in the State of Georgia.

## III.   PARTIES

11.     Plaintiff Perquondis Holmes is a natural person residing in Waterloo, Iowa.

12.     Plaintiff Perquondis Holmes is a consumer as defined by the Fair Credit Reporting Act, 15 U.S.C. § 1681a, (b) and (c).

13.     Upon information and belief, Experian Information Solutions, Inc. is a California corporation duly authorized and qualified to do business in the State of Georgia.

14.     Experian is a "credit reporting agency," as defined in 15 U.S.C. § 1681a(f) and it disburses consumer reports to third parties for monetary compensation.

4

15.    Upon information and belief, Trans Union, LLC is an Illinois corporation duly authorized and qualified to do business in the State of Georgia.

16.    Trans Union is a "credit reporting agency," as defined in 15 U.S.C. § 1681a(f) and it disburses consumer reports to third parties for monetary compensation.

17.    Upon information and belief, Equifax Information Services, LLC is a Georgia corporation duly authorized and qualified to do business in the State of Georgia.

18.    Equifax is a "credit reporting agency," as defined in 15 U.S.C. § 1681a(f) and it disburses consumer reports to third parties for monetary compensation.

19.    LJ Ross Associates, Inc. ("LJ Ross") is a company with its principal office located in Jackson, MI. At all times relevant to this Complaint, LJ Ross was a "furnisher" as governed by the FCRA.

20.    Upon information and belief, LJ Ross is a "person" as defined by the FCRA, 15 U.S.C. § 1681a(b).

21.    Defendant Aargon Agency Inc., ("Aargon"), is a company with its principal office located in Las Vegas, NV.  At all times relevant to this Complaint, Aargon was a "furnisher" as governed by the FCRA.

22.    Upon information and belief, Aargon is a "person" as defined by the FCRA, 15 U.S.C. § 1681a(b).

## IV.    FACTS OF THE COMPLAINT

23.    On or about October 15, 2019, Mr. Holmes was admitted into federal custody.

24.    On or about December 13, 2023, Mr. Holmes was released from federal custody.

25.    After his release, Mr. Holmes obtained a copy of his credit report from each of the three largest consumer reporting agencies, Equifax, Experian, and Trans Union.

26.    Upon receipt, Mr. Holmes discovered that his consumer report contained numerous accounts that did not belong to him.

27.    Mr. Holmes's consumer report contained fraudulent accounts from both LJ Ross and Aargon.

28.    Specifically, LJ Ross furnished a tradeline alleging that Mr. Holmes owed a debt in the amount of $1,054.00.

29.    The tradeline alleged the original creditor was Peoples Gas Light and Coke Co.

30.     Upon information and belief, Peoples Gas (short for The Peoples Gas Light and Coke Company) is a gas utility subsidiary of WEC Energy Group serving the city of Chicago, Illinois, and its northern suburbs.

31.     The tradeline further alleged the account was opened in October 2023.

32.     The tradeline alleged negative payment history from November 2023 through March 2024.

33.     Mr. Holmes was in federal custody throughout that time period.

34.     On one or more occasions since March 2024, Mr. Holmes submitted disputes to Equifax, Experian, and Trans Union regarding the derogatory reporting of the fraudulent LJ Ross account.

35.     Mr. Holmes requested that Equifax, Experian, and Trans Union delete the fraudulent and derogatory tradeline from his credit report.

36.     In response to Mr. Holmes's disputes, Equifax, Experian, and Trans Union failed to conduct an adequate and thorough investigation of Mr. Holmes disputes.

37.     Each verified the account as accurate and continued publishing the fraudulent and derogatory tradeline.

38.     Upon information and belief, Equifax, Experian, and Trans Union each forwarded Mr. Holmes's disputes to LJ Ross.

7

39.    None of the Defendants conducted an adequate or thorough investigation into Mr. Holmes's disputes. Instead, they verified the information as accurate, and the accounts remained on his credit report.

40.    On or about January 2024, Aargon began furnishing a tradeline alleging that Mr. Holmes owed a debt in the amount of $1,111.

41.    The tradeline alleged the original creditor was Com Ed Commonwealth Edison Company.

42.    The tradeline further alleged the account was opened in January 2024.

43.    Upon information and belief, Com Ed Commonwealth Edison Company is an electric utility in Illinois, and the primary electric provider in Chicago and much of Northern Illinois.

44.    On or about March 27, 2024, Mr. Holmes began receiving dunning communications from Aargon.

45.    To be clear, Mr. Holmes never opened the alleged accounts.

46.    Mr. Holmes is a victim of identity theft.

47.    On one or more occasions since May 2024, Mr. Holmes submitted disputes to Trans Union regarding the derogatory reporting of the fraudulent Aargon account.  Mr. Holmes requested that Trans Union delete the fraudulent and derogatory tradeline from his credit report.

48. In response to Mr. Holmes's disputes, Trans Union failed to conduct an adequate and thorough investigation of Mr. Holmes's disputes.

49. Trans Union verified the account as accurate and continued publishing the fraudulent and derogatory tradelines.

50. Upon information and belief, Trans Union forwarded Mr. Holmes's disputes to Aargon.

51. Neither Trans Union nor Aargon conducted an adequate or thorough investigation into Mr. Holmes's disputes. Instead, they verified the information as accurate, and the account remained on his credit report.

52. As a result of the Defendants' failure to remove this inaccurate information from Mr. Holmes's credit reports, he suffered actual damages, including credit denials, a reduced credit score, stress, anxiety, and emotional distress.

53. As a standard practice, Equifax, Trans Union, and Experian do not conduct independent investigations in response to consumer disputes. Instead, they merely parrot the response of the furnisher despite numerous court decisions admonishing this practice. *See Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997) ("The 'grave responsibilit[y]' imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources. Therefore, a 'reinvestigation' that merely shifts the burden

back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."); *Apodaca v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220, 1230–31 (D. N.M. 2006) (noting that credit reporting agencies may not rely on automated procedures that make only superficial inquiries once the consumer has notified it that information is disputed); *Gorman v. Experian Info. Sols., Inc.*, 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008).

54.    Upon information and belief and consistent with their standard policies and procedures, Equifax, Trans Union, and Experian automatically generated their "investigation" results once LJ Ross and Aargon provided their responses to Mr. Holmes's disputes, verifying that each account belonged to him, and no Equifax, Trans Union, or Experian employee took any additional steps after the furnishers provided their responses to Mr. Holmes's disputes.

55.    Instead, Equifax, Trans Union, and Experian blindly accepted the furnishers' version of the facts and continued to report the inaccurate, derogatory information on Mr. Holmes's credit report.

56.    Equifax, Trans Union, and Experian continue the practice of parroting the response from their furnishers even though they have been repeatedly sued for failing to conduct a reasonable investigation as required by the FCRA.

57.    Equifax, Trans Union, and Experian do not intend to modify their dispute-processing procedures because doing so would drastically increase their operating expenses.

58.    Instead, Equifax, Trans Union, and Experian intentionally choose not to comply with the FCRA to lower their costs and increase profits. Accordingly, Equifax's, Trans Union's, and Experian's violations of the FCRA were willful.

59.    At all times pertinent to this Complaint, LJ Ross and Aargon's processing of consumer disputes were willful and carried out in reckless disregard for a consumer's rights as set forth under the FCRA.

60.    By example only and without limitation, their conduct was willful because it was intentionally accomplished through intended procedures and because their efficiency in processing disputes is believed to be more important than making sure that the disputes are investigated thoroughly and accurately.

## CAUSES OF ACTION

61.    This suit is based upon the Defendants' violations of the Fair Credit Reporting Act.

62.    All causes of action were the producing causes of damages, which Mr. Holmes suffered.

## FIRST CLAIM FOR RELIEF
### 15 U.S.C. § 1681e(b)
### (DEFENDANTS EXPERIAN, TRANS UNION, and EQUIFAX ONLY)

63.    Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

64.    Experian, Trans Union, and Equifax violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and credit files they published and maintained.

65.    As a result of Experian, Trans Union, and Equifax's conduct, Plaintiff suffered concrete and particularized harm, including without limitation: loss of credit, credit damage, damage to reputation, embarrassment, humiliation, and other emotional distress.

66.    Experian, Trans Union, and Equifax's conduct in violating § 1681e(b) were willful, rendering them liable to Plaintiff for actual damages, statutory damages, punitive damages, costs, and attorney's fees in an amount to be determined pursuant to 15 U.S.C. § 1681n.

67.    In the alternative, they were negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

## SECOND CLAIM FOR RELIEF
### 15 U.S.C. § 1681i
### (DEFENDANTS EXPERIAN, TRANS UNION, and EQUIFAX ONLY)

68.    Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

69.    Experian, Trans Union, and Equifax violated multiple sections of § 1681i, including but not limited to: (1) failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information or delete the item from Plaintiff's credit file in violation of § 1681i(a)(1); (2) failing to review and consider all relevant information submitted by Plaintiff in violation of §1681i(a)(4); (3) failing to promptly delete the disputed inaccurate items of information from Plaintiff's credit file or modify the item of information upon a lawful reinvestigation of § 1681i(a)(5)(A); and (4) failing to promptly delete the disputed, inaccurate information from Plaintiff's credit file in violation of § 1681i(a)(5)(A).

70.    As a result of Experian, Trans Union, and Equifax's conduct, Plaintiff suffered concrete and particularized harm, including without limitation: loss of credit, credit damage, damage to reputation, embarrassment, humiliation, and other emotional distress.

71.    Experian, Trans Union, and Equifax's conduct in violating § 1681i were willful, rendering them liable to Plaintiff for actual damages, statutory

13

damages, punitive damages, costs, and attorney's fees in an amount to be determined pursuant to 15 U.S.C. § 1681n.

72.    In the alternative, Experian, Trans Union, and Equifax were negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

**THIRD CLAIM FOR RELIEF**
**15 U.S.C. § 1681s-2(b)(1)(A)**
**(DEFENDANTS LJ ROSS AND AARGON)**

73.    Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

74.    On one or more occasions within the past two years, by example only and without limitation, Defendants violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's disputes.

75.    Plaintiff disputed the account with one or more credit bureaus, as discussed above.

76.    When Plaintiff disputed his account with the credit bureaus, Defendants used a dispute system named "e-Oscar," which has been adopted by the consumer reporting agencies and their furnisher customers (such as Defendants).

77.    E-Oscar is an automated system, and the procedures used by the credit reporting agencies are systematic and uniform.

78.     When a consumer reporting agency receives a consumer dispute, it (usually via an outsourced vendor) translates each dispute into an automated consumer dispute verification ("ACDV") form.

79.     Upon information and belief, the ACDV form is the method by which Defendants have elected to receive consumer disputes pursuant to 15 U.S.C. § 1681i(a).

80.     Upon information and belief, the credit reporting agencies forwarded Plaintiff's dispute via an ACDV to Defendants.

81.     Defendants understood the nature of Plaintiff's disputes when it received the ACDV forms.

82.     Upon information and belief, when Defendants received the ACDV form containing Plaintiff's dispute, it followed a standard and systematically unlawful process where it only reviewed its own internal computer screen for the account and repeated back the same information to the ACDV system that was previously reported to the credit reporting agency.

83.     Upon information and belief, when Defendants receive a consumer dispute through e-Oscar, it does not conduct a substantive review of any sort to determine whether or not the information already in its computer system is itself accurate.

15

84.    As a result of Defendants' violations of 15 U.S.C. § 1681s-2(b)(1)(A), Plaintiff suffered concrete and particularized harm, including loss of credit, damage to reputation, embarrassment, humiliation, stress, and other emotional distress.

85.    Defendants' conduct in violating 15 U.S.C. § 1681s-2(b)(1)(A) was willful, rendering them liable to Plaintiff for punitive damages in an amount to be determined pursuant to 15 U.S.C. § 1681n.

86.    In the alternative, Defendants were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

## FOURTH CLAIM FOR RELIEF
### 15 U.S.C. § 1681s-2(b)(1)(B)
### (DEFENDANTS LJ ROSS AND AARGON ONLY)

87.    Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

88.    On one or more occasions within the past two years, by example only and without limitation, Defendants violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by the credit reporting agencies.

89.    As Plaintiff detailed in the previous Count, Defendants has elected to use the e-Oscar system for its FCRA disputes received through the consumer reporting agencies.

90.     Defendants are aware of the meaning of the several dispute codes used by the consumer reporting agencies in e-Oscar.

91.     Defendants do not contend that the ACDV system is an inadequate means to receive FCRA disputes through the consumer reporting agencies.

92.     Defendants understood Plaintiff's disputes and that Plaintiff claimed the account did not belong to her.

93.     As a result of Defendants' violations of 15 U.S.C. § 1681-2(b)(1)(B), Plaintiff suffered concrete and particularized harm, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation, and other emotional distress.

94.     Defendants' violations of 15 U.S.C. § 1681s-2(b)(1)(B) were willful, rendering them liable for punitive damages in an amount to be determined pursuant to 15 U.S.C. §§ 1681n and 1681o.

95.     In the alternative, Defendants were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.  Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorney's fees from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

## FIFTH CLAIM FOR RELIEF
### 15 U.S.C. § 1681s-2(b)(1)(C) and (D)
### (DEFENDANTS LJ ROSS AND AARGON ONLY)

96.   Plaintiff realleges and incorporates the foregoing paragraphs as if fully set out herein.

97.   Defendants violated 15 U.S.C. § 168ls-2(b)(l)(C) and (D) by publishing the false information within Plaintiff's credit files with and to Trans Union, Experian, and/or Equifax in response to Plaintiff's disputes without also including a notation that this debt was disputed and by failing to correctly report results of an accurate investigation to each credit reporting agency.

98.   Plaintiff's disputes were, at a minimum, bona fide.

99.   As a result of these violations of 15 U.S.C. § 1681s-2(b)(l)(C) and (D), Plaintiff suffered actual damages, including but not limited to: loss of credit opportunity, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

100.  Defendants' violations were willful, rendering them liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln.

101.  In the alternative, Defendants were negligent, which entitles Plaintiff to recover under 15 U.S.C. § 1681o.

102.  Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs, and attorney's fees from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## SIXTH CLAIM FOR RELIEF
## 15 U.S.C. § 1681s-2(b)(1)(E)
## (DEFENDANTS LJ ROSS AND AARGON ONLY)

103.   Plaintiff re-alleges and reincorporates all previous paragraphs as if fully set out herein.

104.   Defendants have violated 15 U.S.C. § 1681s-2(b)(1)(E) including but not limited to its failure to have a procedure to (i) modify the information in its system, (ii) delete that item of information, or (iii) permanently block the reporting of the information.

105.   As a result of these violations of 15 U.S.C. § 1681s-2(b)(l)(E), Plaintiff suffered actual damages, including but not limited to: loss of credit opportunity, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

106.   Defendants' violations were willful, rendering them liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln.

107.   In the alternative, Defendants were negligent, which entitles Plaintiff to recover under 15 U.S.C. § 1681o.

108.   Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs, and attorney's fees from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## JURY DEMAND AND PRAYER FOR RELIEF

WHEREFORE, Plaintiff Perquondis Holmes respectfully requests that this Honorable Court enter judgment in favor of Plaintiff Perquondis Holmes and against Defendants Experian Information Solutions, Inc., Trans Union, LLC, Equifax Information Services, LLC, LJ Ross Associates, Inc., and Aargon Agency Inc. for the following:

a. Judgment that Defendants violated the FCRA;

b. Actual or Statutory damages pursuant to 15 U.S.C. § 1681n and 15 U.S.C. § 1681o;

c. Punitive and/or statutory damages pursuant to 15 U.S.C. § 1681n and 15 U.S.C. § 1681o;

d. Attorney's Fees, Costs, and Expenses incurred in this action pursuant to 15 U.S.C. § 1681n and 15 U.S.C. § 1681o;

e. For such other and further relief as the Court may deem just and proper.

Respectfully submitted:

**Law By JW, LLC**
1590 Jonesboro Rd. SE #6839
Atlanta, GA 30315
Phone: (832) 422-6362
jeff@lawbyjw.com

20

By: _____

JEFFREY A. WILSON